UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| AMIE G.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:19-cv-00946-JRS-TAB |
| | ) |
| ANDREW M. SAUL, Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

# ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Amie G. ("Ms. G.") applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") from the Social Security Administration ("SSA") on November 23, 2015, alleging an onset date of February 21, 2014. [ECF No. 6-2 at 16.] Her applications were initially denied on March 30, 2016, [ECF No. 6-4 at 2; ECF No. 6-4 at 6], and upon reconsideration on July 21, 2016, [ECF No. 6-4 at 12; ECF No. 6-4 at 15]. Administrative Law Judge Marc Jones (the "ALJ") conducted a hearing on January 31, 2018. [ECF No. 6-2 at 35-67.] The ALJ issued a decision on May 1, 2018, concluding that Ms. G. was not entitled to benefits. [ECF No. 6-2 at 13.] The Appeals Council denied review on January 9, 2019. [ECF No. 6-2 at 2.] On March 7, 2019, Ms. G. timely filed this civil action asking the Court to

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

review the denial of benefits according to 42 U.S.C. §§ 405(g) and 1383(c). [ECF No. 1.]

# I.
## STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits … to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last … not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must accord the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

2

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v)[2], evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(e), (g). The burden of proof is on the claimant for Steps One

---

[2] The Code of Federal Regulations contains separate, parallel sections concerning DIB and SSI, which are identical in most respects. *See, e.g.*, 20 C.F.R. § 416.920(a)(4)(i)-(v). The Court will take care to detail any substantive differences that are applicable to the case, but will not always reference the parallel section.

through Four; only at Step Five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## II.
### BACKGROUND

Ms. G. was 44 years of age at the time she alleged her disability began. [*See* ECF No. 6-5 at 2.] She has completed high school, [ECF No. 6-2 at 40], and previously worked as a cashier, laborer, laundry worker, front desk receptionist, and self-employed as a resale store operator. [ECF No. 6-6 at 19.][3]

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that Ms. G. was not disabled. [ECF No. 6-2 at 26.] Specifically, the ALJ found as follows:

- Ms. G. last met the insured status requirements of the Social Security Act on March 31, 2018 (the date last insured or "DLI").[4] [ECF No. 6-2 at 18.]

---

[3] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[4] Ms. G. must prove the onset of disability on or before her DLI to be eligible for DIB. *See Shideler v. Astrue*, 688 F.3d 308, 311 (7th Cir. 2012); *see also* 20 C.F.R. § 404.131. Recognizing that Ms. G. also had a claim for SSI, the ALJ's subsequent findings considered the period at issue for that claim, beginning with Ms. G.'s alleged onset date through the date of the decision. *See, e.g.*, [ECF No. 6-2 at 26.]

4

- At Step One, she had not engaged in substantial gainful activity[5] since February 21, 2014, the alleged onset date. [ECF No. 6-2 at 18.]

- At Step Two, she had "the following severe impairments: osteoarthritis of the hips; carpal tunnel syndrome of the left wrist (CTS); depression; anxiety; and obesity." [ECF No. 6-2 at 18 (citations omitted).]

- At Step Three, Ms. G. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [ECF No. 6-2 at 19.]

- After Step Three but before Step Four, she had the RFC "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is limited to no more than occasional handling and fingering with her left hand, as well as no more than occasional climbing of ramps and stairs and occasional stooping, kneeling, and crouching; the claimant can never crawl or climb ladders, ropes, or scaffolds; the claimant can never work at unprotected heights, on slippery surfaces, or on dangerous or uneven terrain; the claimant can never tolerate exposure to the general public; the claimant can work in proximity to others, but only with brief, incidental interaction with others and no tandem job tasks requiring cooperation with other workers to complete the task; the claimant could work where supervisors occasionally interact with the worker throughout the work day; the claimant is limited to performing simple routine tasks and she must use a medically necessary cane at all times while walking." [ECF No. 6-2 at 20-21.]

- At Step Four, relying on the testimony of the vocational expert ("VE") and considering Ms. G.'s RFC, she was incapable of performing any of her past relevant work as a cashier. [ECF No. 6-2 at 25.]

- At Step Five, relying on the VE's testimony and considering Ms. G.'s age, education, work experience, and RFC, she was capable of performing other work with jobs existing in significant numbers in the national economy that she could have performed through the date of the decision, including in representative occupations such as a small products assembler and machine feeder. [ECF No. 6-2 at 25-26.]

---

[5] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

# III.
## DISCUSSION

Ms. G. raises three assignments of error, that the ALJ did not properly consider: (1) Ms. G.'s migraines to be a severe impairment at Step Two, (2) whether her impairments met or equaled Listings 11.02 and 1.02(A), and (3) the cumulative effect of all her impairments—both severe and non-severe—including her obesity under SSR 02-1p.

**A. Migraines**

The ALJ found that Ms. G.'s migraine headaches were not a medically determinable impairment at Step Two, because even though the record indicated such a diagnosis there was not document imaging or diagnostic evidence to support it. [ECF No. 6-2 at 19.] The ALJ cited to the regulations for the point that a claimant's statement of symptoms alone cannot establish an impairment in the absence of signs and laboratory findings. [ECF No. 6-2 at 19 (citing 20 C.F.R. § 404.1568).] The ALJ explained that as to Ms. G.'s complaints of carpal tunnel syndrome in the right wrist and "headaches, the record is without objective clinical findings as to the abnormal cranial nerves or neurological abnormality (such as loss of balance, coordination, etc.)." [ECF No. 6-2 at 19.]

The Seventh Circuit held in *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014), *as amended on denial of reh'g* (Oct. 24, 2014), that "[n]o doctor ever suggested that the MRI evidence meant anything about Moon's migraines, and for good reason. Doctors use MRIs *to rule out other possible causes of headache*—such as a tumor— meaning that an unremarkable MRI is completely consistent with a migraine

diagnosis." *Id.* (emphasis in original) (citing information from the Mayo Clinic).  Here too, there is no indication that an acceptable medical source found the lack of objective verification of Ms. G.'s migraines to be significant such that the void in the record could be a valid reason to doubt the severity of Ms. G.'s impairment.  The Seventh Circuit further explained that the "mistaken reading of the evidence illustrates why ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves." *Id.* (citing *Rohan v. Chater,* 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.")) (other citation omitted).  In *Moore v. Colvin,* 743 F.3d 1118, 1125 (7th Cir. 2014), the Seventh Circuit held that "[a]n ALJ must consider subjective complaints of pain if a claimant has established a medically determined impairment that could reasonably be expected to produce the pain.  Moore has established that she suffers from chronic migraines, which are the type of impairment that can reasonably be expected to cause pain." *Id.* (citing *Carradine v. Barnhart,* 360 F.3d 751, 753 (7th Cir. 2004); *Indoranto v. Barnhart,* 374 F.3d 470, 474 (7th Cir. 2004)).  Here, multiple acceptable medical sources—including Ms. G.'s primary care physician—have diagnosed Ms. G. with chronic migraines. [*See e.g.*, ECF No. 6-22 at 46 (listed as her primary diagnosis on August 4, 2017).]

Whether the ALJ erred at Step Two is not material to the outcome of Ms. G.'s case.  The Seventh Circuit has explained that "[a]s long as the ALJ determines that the claimant has one severe impairment, the ALJ will proceed to the remaining steps of the evaluation process." *Castile v. Astrue,* 617 F.3d 923, 926-27 (7th Cir. 2010)

7

(citing 20 C.F.R. § 404.1523; see *Golembiewski v. Barnhart,* 322 F.3d 912, 918 (7th Cir. 2003) ("Having found that one or more of [appellant's] impairments was 'severe,' the ALJ needed to consider the *aggregate* effect of the entire constellation of ailments—including those impairments that in isolation are not severe.")). "Therefore, the step two determination of severity is 'merely a threshold requirement.'" *Castile,* 617 F.3d at 927 (quoting *Hickman v. Apfel,* 187 F.3d 683, 688 (7th Cir. 1999)). As noted above, the ALJ found at least one severe impairment and continued to assess an RFC for consideration at the later steps.

However, the Court finds reversable error because there is no indication in the ALJ's written decision that Ms. G.'s migraines were considered at the remaining steps of the inquiry. The Seventh Circuit has explained that "the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon,* 763 F. 3d at 721 (quoting *Moore,* 743 F.3d at 1121).

The ALJ did not confront the relevant evidence. After applying for benefits, Ms. G. completed paperwork for the SSA, including a headache questionnaire, where she reported three to four headaches per week lasting around 45 minutes each. [ECF No. 6-6 at 53.] On August 24, 2015, she reported to her treating provider that she had migraine headaches with nausea, photophobia, and phonophobia occurring about three times a week. [ECF No. 6-15 at 41.] Ms. G. was prescribed Topamax for her migraines to be gradually tapered up from 25 mg to 100 mg per day. [ECF No. 6-15 at 42.] On February 20, 2016, she complained of getting daily migraines and needing to take Advil a couple hours after the Topamax when it was not working. [ECF No.

8

6-15 at 30.] Her provider increased her dosage of Topamax to 100 mg twice per day. [ECF No. 6-15 at 31.] On May 11, 2016, Ms. G.'s provider noted that she was compliant with treatment but was still complaining of having more headaches. [ECF No. 6-15 at 21.] Her Topamax was increased to 200 mg twice per day. [ECF No. 6-15 at 22.] On September 2, 2016, Ms. G. treated with a neurology and pain management specialist and described "severe headaches, in bilateral frontal, and temporal lobes. She states it [is] constant, and she is having about three headaches a week, with [peripheral] vision problems." [ECF No. 6-23 at 46.] On August 4, 2017, Ms. G.'s provided notes that she was "on Topamax 200mg [twice per day], but now has migraines 3 times/week. Takes Aleve and rests when migraines occur, but failed twice. Will add Depakote 125mg [once per day] and start Imitrex." [ECF No. 6-22 at 46.]

The ALJ did not acknowledge any of the supportive evidence of Ms. G.'s migraines. The SSA's own policy guidance explains that the SSA "will consider the consistency of the individual's own statements. To do so, we will compare statements an individual makes in connection with the individual's claim for disability benefits with any existing statements the individual made under other circumstances." Social Security Ruling ("SSR") 16-3p (S.S.A. Oct. 25, 2017), 2017 WL 5180304, at *8. The ruling also explains that "[p]ersistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense

9

and persistent." *Id.* at *9. Ms. G. testified that she continues to have migraines about two to three times a week and must take a sleeping pill to treat them. [ECF No. 6-2 at 52-53.] The VE further testified that even one absence per month on an ongoing basis or the inability to remain on-task ninety percent of a workday apart from customary breaks would be barriers to sustaining unskilled employment in the competitive economy. [ECF No. 6-2 at 65.] However, aside from the rationale that Ms. G.'s migraines could not be objectively verified, that Court does not find any basis in the ALJ's written decision to explain how the supportive evidence was discounted such that he was able to conclude that Ms. G. could sustain employment.

Accordingly, the Court finds that remand is necessary for further consideration of Ms. G.'s migraines, including their effect on her RFC. The Court also finds that the ALJ must specifically consider Ms. G.'s migraines at Step Three. The regulations provide that the SSA will consider analogous listings if the claimant has an impairment that is not listed:

> If you have an impairment(s) that is not described in the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter, we will compare your findings with those for closely analogous listed impairments. If the findings related to your impairment(s) are at least of equal medical significance to those of a listed impairment, we will find that your impairment(s) is medically equivalent to the analogous listing.

20 C.F.R. § 404.1526(b)(2). Ms. G. argues that the severity of her migraines and their frequency medically equals the requirements of a seizure listing, Listing 11.02. Further consideration of her migraines by use of the closest analogous listing is necessary on remand. Regardless of what the ALJ finds in this regard, the ALJ's findings should be sufficiently explained to allow meaningful review.

**B. Listing 1.02(A)**

To the extent that Ms. G.'s argument that her condition met or medically equaled Listing 1.02(A) implies that an award of benefits would be warranted, the Court disagrees. [*See* ECF No. 8 at 27.] Listing 1.02(A) for major dysfunction of one major weight-bearing joint requires, in part, that the impairment results "in inability to ambulate effectively, as defined in 1.00B2b." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.02(A). The referenced regulatory section explains:

> b. What We Mean by Inability To Ambulate Effectively
>
> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. [ . . . ]
>
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.00(B)(2)(b). On December 5, 2016, Ms. G. underwent a left total hip replacement surgery to address degenerative arthritis. [ECF No. 6-20 at 32.] However, given her testimony at the 2018 hearing that she

was able to walk for "[a]bout … seven-eight minutes," with a cane down to the end of the local mall and back before sitting, the Court does not find evidence that Ms. G.'s ambulatory ability to complete activities of daily living was limited to the extent required by the listing. [ECF No. 6-2 at 53-54.] Furthermore, no acceptable medical source has determined that her osteoarthritis of her left hip equals the severity of a listing. Accordingly, the Court does not find that the record warranted an award of benefits based on Listing 1.02(A) or that further consideration of the listing is necessary on remand.

**C. Obesity**

Ms. G. also argues that the ALJ failed to consider the combined effect of Ms. G.'s severe and non-severe impairments—including obesity—on her RFC. [ECF No. 8 at 33-35.] But, having found that remand is necessary for further consideration of Ms. G.'s migraines, the Court declines to provide an in-depth discussion of the issue. Still, the Court agrees that further consideration of Ms. G.'s combined impairments—including her obesity—are necessary on remand. As noted above, the ALJ ostensibly found that Ms. G.'s obesity was a severe impairment. However, there is no specific discussion of the impairment's effect on Ms. G.'s claim at the remaining steps of the evaluation process. The evidence showed that Ms. G. had a body mass index of 37.59 on June 22, 2016, [ECF No. 6-15 at 6], which increased to 42.42 on August 4, 2017, [ECF No. 6-22 at 48.] Despite evidence of her weight increasing during the period at issue and significant dysfunction of a major weight-bearing joint requiring replacement, there was no relevant discussion by the ALJ that demonstrates that the

combined effect of all of Ms. G.'s impairments were considered. Ms. G., for example, testified that she could not maintain weight bearing on her left leg to do the dishes. [ECF No. 6-2 at 50.] As noted above, the ALJ found that Ms. G would need to use a cane for ambulation but could otherwise stand for six hours of an eight-hour workday to perform light exertional work. The Court finds that further consideration of the issue is necessary to assure that the ALJ has considered Ms. G.'s combined impairments, including her migraines and obesity, as well as the effect of her obesity on her other impairments. Again, the ALJ should sufficiently explain his findings so that a reviewing court could provide meaningful review.

## IV.
### CONCLUSION

For the reasons detailed herein, the Court **REVERSES** the ALJ's decision denying Ms. G.'s benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C.§ 405(g) (sentence 4) as detailed above. Final judgment will issue accordingly.

Date: 1/21/2020

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Catherine Seagle
SOCIAL SECURITY ADMINISTRATION
catherine.seagle@ssa.gov

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov

Kirsten Elaine Wold
HANKEY LAW OFFICE
kew@hankeylaw.com